Filed 2/26/25  P. v. Woodson CA2/2

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

# IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION TWO

|  |  |
|---|---|
| THE PEOPLE, | B334504 |
| Plaintiff and Respondent, | (Los Angeles County Super. Ct. No. BA419591) |
| v. | |
| THOMAS WOODSON, | |
| Defendant and Appellant. | |

APPEAL from an order of the Superior Court of Los Angeles County, Ronald S. Coen, Judge.  Affirmed.

Elizabeth Richardson-Royer, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Susan Sullivan Pithey, Assistant Attorney General, Idan Ivri and Marc A. Kohm, Deputy Attorneys General, for Plaintiff and Respondent.

Defendant and appellant Thomas Woodson (defendant) appeals from the denial of his petition for vacatur of his murder conviction and for resentencing under Penal Code section 1172.6.[1] He contends the trial court erred by finding him ineligible for relief under section 1172.6 as a matter of law and denying his petition at the prima facie stage. Defendant alleges he made a prima facie showing of eligibility under the statute because faulty jury instructions were given at his 2016 trial. Finding no merit to defendant's contention, we affirm the order.

## BACKGROUND

Defendant and codefendants Berlinda Green, Ernest Lamont Williams, and Anthony Boochee were charged by amended information with the 1998 murder of Arlando Bryant (§ 187, subd. (a), count 1) and conspiracy to commit murder (§ 182, subd. (a)(1), count 2). As to count 1, it was alleged the murder was intentional and carried out for financial gain within the meaning of section 190.2, subdivision (a)(1), and it was intentional and committed by means of lying in wait within the meaning of section 190.2, subdivision (a)(15). In both counts, it was alleged the offenses were committed for the benefit of a gang (§ 186.22), and a principal personally used and discharged a firearm causing death (§ 12022.53).

In 2016, defendant was tried with Williams and Boochee, but a separate jury was empaneled for defendant. Williams and Boochee were convicted of both first degree murder and conspiracy as charged. All the special allegations were found

---

[1] All further unattributed code citations are to the Penal Code.

2

true.  Defendant was convicted of second degree murder, acquitted of conspiracy, and the special circumstance of lying in wait was found not true.  The jury did find true the gang and firearm allegations.  Defendant's jury was unable to reach a verdict regarding the financial gain allegation.  On February 23, 2017, defendant was sentenced to an aggregate term of 40 years in prison.  The judgment was affirmed in *People v. Williams* (Oct. 24, 2018, B281118) (nonpub. opn.).

**Relevant legal principles applicable to section 1172.6**

Effective January 1, 2019, the Legislature passed Senate Bill No. 1437 (2017–2018 Reg. Sess.) (Senate Bill 1437), amending sections 188 and 189, the laws pertaining to felony murder and murder under the natural and probable consequences doctrine, "to ensure that murder liability is not imposed on a person who is not the actual killer, did not act with the intent to kill, or was not a major participant in the underlying felony who acted with reckless indifference to human life." (Stats. 2018, ch. 1015, § 1, subd. (f).)  The 2019 amendments to sections 188 and 189 effectively eliminated murder liability under the natural and probable consequences doctrine and changed the requirements for felony murder liability.  (*People v. Gentile* (2020) 10 Cal.5th 830, 849 (*Gentile*).)[2] Under current law and with exceptions not relevant here, "in order to be convicted of murder, a principal in a crime shall act

---

[2] Under the natural and probable consequences doctrine, a "'person who knowingly aids and abets criminal conduct is guilty of not only the intended [target] crime . . . but also of any other crime the perpetrator actually commits . . . that is a natural and probable consequence of the intended crime.'" (*People v. Medina* (2009) 46 Cal.4th 913, 920.)

3

with malice aforethought.  Malice shall not be imputed to a person based solely on his or her participation in a crime." (§ 188, subd. (a)(3).)

Senate Bill 1437 also enacted section 1172.6, formerly section 1170.95, which sets forth a procedure to petition for retroactive relief for those who could not now be convicted under sections 188 and 189 as amended.  (See *People v. Lewis* (2021) 11 Cal.5th 952, 957.)  The procedure provides that a petition may be filed by a person convicted of felony murder or murder under the natural and probable consequences doctrine; and effective January 1, 2022, Senate Bill No. 775 (2021–2022 Reg. Sess.) (Senate Bill 775) extended the availability of relief to any "other theory under which malice is imputed to a person based solely on that person's participation in a crime."  (§ 1172.6, subd. (a)(1).) The petition must allege the required three conditions: (1) The charging document "allowed the prosecution to proceed under a theory of felony murder, murder under the natural and probable consequences doctrine or other theory under which malice is imputed to a person based solely on that person's participation in a crime, or attempted murder under the natural and probable consequences doctrine"; (2) "The petitioner was convicted of murder, attempted murder, or manslaughter following a trial or accepted a plea offer in lieu of a trial at which the petitioner could have been convicted of murder or attempted murder"; and (3) "The petitioner could not presently be convicted of murder or attempted murder because of changes to Section 188 or 189 made effective January 1, 2019."  (§ 1172.6, subd. (a).)

If the petitioner establishes a prima facie case for relief, the court must issue an order to show cause, conduct an evidentiary hearing and decide whether to vacate the murder conviction, and

4

then resentence the petitioner on any remaining counts if it finds the petitioner entitled to relief. (§ 1172.6, subds. (c) & (d); *People v. Lewis, supra*, 11 Cal.5th at p. 960.) At the prima facie stage, the allegations of the petition must be accepted as true but, without engaging in factfinding, the trial court may look to the record of conviction to determine whether the allegations have been refuted as a matter of law. If so, no prima facie showing can be made and the petition is properly denied. (*People v. Lewis, supra*, at pp. 971–972.) We independently review the trial court's prima facie determination that a petitioner is ineligible for section 1172.6 relief as a matter of law. (*People v. Coley* (2022) 77 Cal.App.5th 539, 545.)

**Defendant's section 1172.6 petition**

In September 2022, defendant filed a form petition pursuant to former section 1170.95 (since renumbered as section 1172.6).[3] He checked the boxes alleging required conditions for relief and requested the appointment of counsel, including the allegation that the charging document "allowed the prosecution to proceed under a theory of felony murder, murder under the natural and probable consequences doctrine or other theory under which malice is imputed to a person based solely on that

---

[3]    Defendant filed a petition in 2020, before Senate Bill 775 extended the availability of relief to any "other theory under which malice is imputed to a person based solely on that person's participation in a crime." (§ 1172.6, subd. (a)(1).) The trial court denied the 2020 petition after finding defendant ineligible for relief as a matter of law because the jury was not instructed regarding the natural and probable consequences doctrine or the felony murder rule.

person's participation in a crime, or attempted murder under the natural and probable consequences doctrine."

The trial court received briefing, appointed counsel for defendant and held a hearing to determine whether defendant had made a prima facie showing of eligibility. On September 14, 2023, the trial court denied the petition. The court stated it had read and considered the entire file including the petition and jury instructions and found defendant ineligible for relief as a matter of law.

Defendant filed a timely notice of appeal from the order.

## DISCUSSION

Defendant contends the trial court erred in that although there were no jury instructions regarding the natural and probable consequences doctrine, felony murder or imputed malice, defendant claims the jury instructions given at his 2016 trial, in particular the combined effect of CALJIC Nos. 3.01 and 8.31 were ambiguous regarding the mens rea or mental state necessary to find him guilty of murder as an aider and abettor.[4] Thus, he concludes, the jury was permitted to impute malice to him "based solely on his participation in the crime."

Though defendant focuses on CALJIC Nos. 3.01 and 8.31, the issue of whether defendant's jury was adequately instructed regarding the required mens rea and aiding and abetting requires a review of those instructions as well as CALJIC Nos. 3.00, 8.10, 8.11, and 8.30, also given to the jury. We begin with

---

[4] The conspiracy instructions indicated codefendant Williams was the alleged perpetrator, and defendant was tried on the theory he was a lookout. Defendant claimed he was asleep in the back seat of a van occupied by his codefendants.

6

relevant portions of all such instructions, in the order in which they were given.

CALJIC No. 3.00, defined principals in a crime as those involved in committing that crime, and it instructed: "Each principal, regardless of the extent or manner of participation is guilty of a crime. Principals include: [¶] 1. Those who directly and actively commit the act constituting the crime, or [¶] 2. Those who aid and abet the commission of the crime. [¶] When the crime charged is murder, the aider and abettor's guilt is determined by the combined acts of all the participants as well as that person[']s own mental state. If the aider and abettor's mental state is more culpable than that of the actual perpetrator, that person's guilt may be greater than that of the actual perpetrator. Similarly, the aider and abettor's guilt may be less than the perpetrator's, if the aider and abettor has a less culpable mental state."

CALJIC No. 3.01 was read in relevant part as follows: "A person aids and abets the commission of a crime when he or she: [¶] (1) [w]ith knowledge of the unlawful purpose of the perpetrator, and [¶] (2) [w]ith the intent or purpose of committing or encouraging or facilitating the commission of the crime, and [¶] [b]y act or advice, aids, promotes, encourages or instigates the commission of the crime."

CALJIC No. 8.10, defined murder as the unlawful killing of a human being with malice aforethought. CALJIC No. 8.11 explained express malice as an intent to kill and instructed that malice is implied when: "1. [t]he killing resulted from an intentional act; [¶] 2. [t]he natural consequences of the act are dangerous to human life; and [¶] 3. [t]he act was deliberately performed with knowledge of the danger to, and with conscious

disregard for, human life." CALJIC No. 8.11 also explained: "When it is shown that a killing resulted from the intentional doing of an act with express or implied malice, no other mental state need be shown to establish the mental state of malice aforethought."[5]

CALJIC No. 8.30 defined second degree murder as the "unlawful killing of a human being with malice aforethought when the perpetrator intended unlawfully to kill a human being but the evidence is insufficient to prove deliberation and premeditation or lying in wait." CALJIC No. 8.31 added that second degree murder was "the unlawful killing of a human being when: [¶] 1. [t]he killing resulted from an intentional act . . . ; [¶] 2. [t]he natural consequences of the act are dangerous to human life, and [¶] 3. [t]he act . . . was deliberately performed with knowledge of the danger to, and with conscious disregard for, human life. [¶] When the killing is the direct result of such an intentional act it is not necessary to prove that the defendant

---

[5]     "'In the context of implied malice, the actus reus required of the perpetrator is the commission of a life-endangering act. For the direct aider and abettor, the actus reus includes whatever acts constitute aiding the commission of the life-endangering act. Thus, to be liable for an implied malice murder, the direct aider and abettor must, by words or conduct, aid the commission of the life-endangering *act*, not the result of that act. The mens rea, which must be personally harbored by the direct aider and abettor, is knowledge that the perpetrator intended to commit *the act*, intent to aid the perpetrator in the commission of *the act*, knowledge that *the act* is dangerous to human life, and acting in conscious disregard for human life.'" (*People v. Reyes* (2023) 14 Cal.5th 981, 991, quoting *People v. Powell* (2021) 63 Cal.App.5th 689, 713.)

8

intended that the act would result in the death of a human being."

Defendant relies on *People v. Langi* (2022) 73 Cal.App.5th 972 (*Langi*) and *People v. Maldonado* (2023) 87 Cal.App.5th 1257 (*Maldonado*) to argue the instructions failed to convey the idea that to be guilty of implied malice murder as an aider and abettor the defendant must have personally known the act he aided was life threatening or that he must himself have acted with conscious disregard for human life.  In *Langi* the act causing death was an accomplice's punch, which caused the victim to fall and hit his head.  (*Langi, supra*, at p. 975.)  The defendant was convicted of second degree murder, robbery and battery (and found not guilty of felony murder).  (*Id*. at p. 977.)  The court reversed the summary denial of the defendant's section 1172.6 petition due to an ambiguity in the aiding and abetting instruction (CALJIC No. 3.01) and the second degree murder instruction (CALJIC No. 8.31), allowing the jury to "find the defendant guilty of aiding and abetting second degree murder without finding that he personally acted with malice" (*Langi, supra*, 73 Cal.App.5th at p. 982).  In *Maldonado* the defendant was convicted of murder, and the court found because the jury was instructed on lying in wait murder, which does not explicitly require a finding of intent to kill, there remained a possibility the jury convicted the defendant on a theory of *imputed* malice rather than implied malice.  (*Maldonado, supra*, at pp. 1260–1263, 1266–1267, citing *Langi, supra,* at p. 983.)

Defendant argues since CALJIC Nos. 3.01 and 8.31 were the same standard instructions given in *Langi*, we should find the same possible confusion of the required mentals states of the

perpetrator and aider and abettor and conclude the ambiguity permitted the jury to impute malice to him.

Those cases are distinguishable from this case on their facts. We also agree with the People that *Langi* and *Maldonado* are distinguishable because a review of other instructions given to defendant's jury, as described above, either clarified or avoided the ambiguity of the required mental state for aiding and abetting.

Defendant acknowledges the CALJIC No. 8.31 definition of second degree murder requires a finding the act resulting in death must have been performed with knowledge of and conscious disregard for the danger to human life, but claims it was unclear the requirement applied to an aider and abettor. Defendant suggests the knowledge and conscious disregard language must also appear in CALJIC No. 3.00 to clarify the aider and abettor's required mental state. To support his argument defendant selects small excerpts from a long passage in *Langi, supra*, 73 Cal.App.5th at page 983, discussing CALJIC Nos. 3.01 and 8.31. Quoting those excerpts defendant claims they demonstrate his "jury needed only find [defendant] 'intended to encourage the perpetrator's intentional *act* . . . whether or not [he] intended to aid or encourage [the victim]'s killing, and whether or not he personally knew [of] and disregarded the risk of such a killing.'" (Italics added.)

However, the *unedited* passage in *Langi* does not support defendant's claim, as it was based only on the facts of that case. What *Langi* actually stated in the passage was: "Since the perpetrator's purpose need not have been to kill the victim, the aider and abettor's knowledge of that purpose similarly need not have been knowledge that the perpetrator aimed to kill. If the

10

perpetrator need not have had 'murderous intent,' certainly the aider and abettor need not have had such an intent. Although the definition of second degree murder in CALJIC No. 8.31 states that the *perpetrator* must have acted with conscious disregard for human life, the definition of an aider and abettor in CALJIC No. 3.01 does not include the same requirement. Thus, under the instructions that were given, the jury was entitled to conclude that, to be guilty as an aider and abettor of second degree murder, appellant need only have intended to encourage the perpetrator's intentional act—in this case, *punching* [the victim]—whether or not appellant intended to aid or encourage [the victim's] killing, and whether or not he personally knew of and disregarded the risk of such a killing." (*Langi, supra*, 73 Cal.App.5th at pp. 982–983, italics added.)[6]

A key word defendant excluded from his edited quote was "punching" and although he included the words, "the risk of such a killing," he clearly disregarded them. Thus, in *Langi* "such a killing" resulted from punching the victim. (*Langi, supra*, 73 Cal.App.5th at p. 983.) The defendant in *Langi* was convicted of second degree murder, robbery and *battery*. (*Id.* at p. 977.) Here, defendant was not convicted of conspiracy, and the only other crime charged against him as well as his codefendants (except Green[7]) that could involve an intentional act resulting in death was murder. CALJIC Nos. 8.10 and 8.11 told jurors that "the crime" was murder. A crime intentionally aided and abetted is

---

[6] We have italicized the words that did not appear in CALJIC No. 8.31 as given to defendant's jury.

[7] Green accepted a plea agreement prior to trial and was thus not tried with the others. (*People v. Williams, supra*, B281118.)

11

known as the "target offense." (*People v. Pacheco* (2022) 76 Cal.App.5th 118, 123.) When a defendant has been convicted of aiding and abetting the target offense, the defendant is liable as a "'direct'" aider and abettor. (*Ibid.*) It follows here that as the charged offense and the target offense were both murder, defendant has been charged and convicted as a direct aider and abettor of murder.

It is the "'aider and abettor who does *not* expressly intend to aid a killing [who] can still be convicted of second degree murder if the person knows that his or her conduct endangers the life of another and acts with conscious disregard for life.'" (*People v. Schell* (2022) 84 Cal.App.5th 437, 442, italics added, quoting *Gentile, supra*, 10 Cal.5th at p. 850.) Since the target offense was murder it was enough for the jury to be instructed defendant knew the perpetrator's purpose and intended to aid, facilitate, or encourage the crime. CALJIC Nos. 3.00 and 3.01 accomplished this by clarifying the aider and abettor's guilt must be determined from his own mental state and by instructing that an aider and abettor must act with knowledge of the unlawful purpose of the perpetrator, with the intent or purpose of committing or encouraging or facilitating the commission of the crime.

The law prior to defendant's trial was a defendant may not be convicted as a direct aider and abettor of murder on an imputed malice theory. (*People v. Berry-Vierwinden* (2023) 97 Cal.App.5th 921, 936 (*Berry-Vierwinden*).) Before defendant's trial, "the direct perpetrator's mental state could *not* be imputed to an aider and abettor, whose mental state had to be independently evaluated." (*People v. Burns* (2023) 95 Cal.App.5th 862, 868 (*Burns*), citing *People v. McCoy* (2001) 25

12

Cal.4th 1111, 1121.)  Aiding and abetting implied malice murder is based upon the definition of implied malice, which was not changed by Senate Bill 1437 or 775.  (*People v. Schell, supra*, 84 Cal.App.5th at p. 442, citing *Gentile, supra*, 10 Cal.5th at p. 850.)

Nothing in the instructions given here refers to imputed malice, only express and implied malice, and "[i]mplied malice is not imputed malice."  (*People v. Carr* (2023) 90 Cal.App.5th 136, 139.)  Thus to the extent that the instructions given to defendant's jury might have been potentially confusing regarding the required mens rea, at the time of defendant's trial it "amount[ed] to 'a routine claim of instructional error' that 'could have been asserted on appeal from the judgment of conviction.'"  (*Berry-Vierwinden*, *supra*, 97 Cal.App.5th at p. 936.)  Defendant "'cannot use it to resurrect a claim that should have been raised in his [direct] appeal.'"  (*Ibid*., quoting *Burns, supra*, 95 Cal.App.5th at p. 865.)

Defendant was entitled to an evidentiary hearing under section 1172.6, subdivision (d) *only* if he made a prima facie showing of all *three* conditions listed in subdivision (a).  (*Burns, supra*, 95 Cal.App.5th at p. 867.)  Defendant has failed to make a prima facie showing of the third condition: that he "could not presently be convicted of murder or attempted murder *because of changes to Section 188 or 189 made effective January 1, 2019*."  (§ 1172.6, subd. (a)(3), italics added.)  Defendant's claim of instructional error was available to him at the time of his appeal from the judgment.  His murder conviction has not become invalid *because* of *changes* to the murder statutes made by Senate Bill 1437, as it did not *change* the existing law prohibiting direct aider and abettor liability on an imputed malice theory.  (*Berry-Vierwinden, supra*, 97 Cal.App.5th at p. 936.)

13

In sum, we have found the instructions regarding aiding and abetting and implied malice to have been sufficiently clear and adequate.  To the extent there were any ambiguities, they were not transformed into the distinct concept of imputed malice. Any of such flaws existed and could have been raised at the time of defendant's trial, so he cannot now use them to resurrect a claim that should have been raised by direct appeal.  (See *Burns, supra*, 95 Cal.App.5th at p. 865.)  Defendant has failed to make a prima facie showing of eligibility under section 1172.6 as a matter of law, and the trial court has committed no error in denying the petition.

## DISPOSITON

The order of September 14, 2023, denying defendant's section 1172.6 petition is affirmed.

_____

CHAVEZ, J.

We concur:


_____

LUI, P. J.


_____

ASHMANN-GERST, J.